WANGSNESS, Respondent v. BERDAHL, Appellant

(13 N. W.2d 293.)

(File No. 8652. Opinion filed February 25, 1944.)

Rehearing Denied April 7, 1944.

**James O. Berdahl, B. O. Stordahl,** and **R. G. May,** all of Sioux Falls, for Appellant.

**Danforth & Danforth,** of Sioux Falls, for Respondent.

ROBERTS, J. This action was commenced on October 8, 1941, against defendant, an attorney at law, to recover an amount received by him in settlement of a judgment rendered in favor of plaintiff and deposited by defendant in a bank which became insolvent. Defendant answered alleging that there was no neglect of a reasonable duty on the part of the defendant, that the cause of action, if any, did not accrue within six years before the commencement thereof and that plaintiff is indebted to defendant in the sum of $1,374.76 for services rendered between February 15, 1924, and February 2, 1933. To this counterclaim, a reply was filed alleging that there were additional services rendered by defendant subsequent to those set forth in the counterclaim. Trial to the court resulted in judgment for plaintiff. Defendant appeals.

The pertinent facts appear from the following portions of the findings:

"Defendant, as an attorney at law, acting for and in behalf of the plaintiff * * * collected * * * a judgment that he had recovered in plaintiff's behalf, payment of which was made to the defendant by * * * check * * *, which check, on or about the 6th day of October, 1925, the defendant deposited in his personal account in the First State Bank of Sioux Falls, South Dakota * * *. That on or about the 13th day of October, 1925, the defendant mailed his personal check * * * to the plaintiff at his residence in San Diego, California * * *, drawn on his own personal account in said First State Bank in Sioux Falls, South Dakota, and through the regular course of mails was received by the above named plaintiff on the 19th day of October, 1925. That the plaintiff immediately placed said check in the bank in which he transacted business in San Diego, California, for clearance and collection * * *. That before said check reached Sioux Falls, South Dakota, * * * the First State Bank * * * failed and was closed by the Superintendent of Banks and the check was dishonored and the plaintiff failed to receive from the defendant * * * the amount of said collection item, being the amount of $4,098.67.

"That the defendant, thereafter, * * * remitted the sum of $400.00 to the plaintiff, and that included with said remittance of $400.00 was a letter dated December 1, 1925, which was written and signed by defendant and addressed to plaintiff, and which letter after referring to the $400.00 remittance contained the further statement: 'Am hoping that I shall be able to send you something more soon. If you have any work which you wish done, I shall be glad to try to take care of it for you, and to scratch around for any necessary expenses connected with it and let same apply on the amount of my check.' * * * In reliance upon said letter and in accordance therewith, the plaintiff sent defendant various items of business and legal work to be handled and performed by the defendant for the plaintiff, and which items of business and legal work were in fact handled and performed by the defendant * * * as indicated in defendant's counterclaim.

"The Court further finds that the defendant, in addition to the amount set forth in his said counterclaim, performed additional services * * *, in that he secured and had entered in this Court a judgment in favor of the plaintiff on or about the 3rd day of April, 1936, for the entry of which judgment defendant advanced the necessary Court costs and expenses, and that there should be credited to him on his said indebtedness to plaintiff as of said date last named * * * $20.00 for services performed and expenses paid by defendant for plaintiff in accordance with defendant's aforesaid letter.

"The Court further finds that the total sum for services and expenses to which defendant is entitled to credit on his counterclaim is $1394.76.

"That plaintiff gave no instructions to defendant as to the manner in which remittance should be made of the proceeds of said collection, and defendant himself decided in what manner he should receive such proceeds, and handle same, and attempt remittance to plaintiff."

 Defendant cites authorities in support of the principle that where an attorney acts with a proper degree of attention, with reasonable care, and to the best of his skill and knowledge, he is not responsible for loss sustained by his client. It is argued that the failure of the plaintiff to receive payment resulted solely from the failure of the bank and not from the neglect of defendant to discharge some duty which was fairly within the purview of his employment. This case involves no claim of negligence. An attorney who has collected money for his client holds the same as trustee, and the circumstances under which he is liable are much the same as any other trustee. 7 C.J.S., Attorney and Client, § 139. It is often stated to be the rule that where a trustee deposits trust funds in his own name, thereby vesting himself with title, he is liable for any loss of the funds. In Naltner v. Dolan, 108 Ind. 500, 8 N. E. 289, 291 58 Am. Rep. 61, attorneys who deposited money collected for their client in a bank in the firm name were held liable to the client for loss resulting from failure of the bank. The court said:

"In case it becomes the duty of an agent or trustee to deposit money belonging to his principal, he can escape the risk only by making the deposit in his principal's name, or by so distinguishing it on the books of the bank as to indicate, in some way, that it is the principal's money. If he deposit in his own name, he will not, in case of loss, be permitted to throw such loss on his principal. * * * In such a case the good faith or intention of the trustee is in no way involved. Having, for his personal convenience, or from whatever motive, deposited the money in his own name, thereby vesting himself with a legal title, it follows, as a necessary consequence, when loss occurs, he will not be permitted to say, as against his cestui que trust, that the fact is not as he voluntarily made it appear."

See also Williams v. Lowe, 62 Ind. App. 357, 113 N. E. 471; Hummer v. Wagner Supply Co., 139 Okl. 24, 280 P. 1103; Williams v. Williams, 55 Wis. 300, 12 N. W. 465, 13 N. W. 274, 42 Am. Rep. 708; Cartmell v. Allard, 7 Bush, Ky., 482; Webster & Baxter v. Pierce & Barber, 35 Ill. 158; In re Stafford, 11 Barb., N.Y., 353; In re Arguello's Estate, 97 Cal. 196, 31 P. 937; Pethybridge v. First State Bank of Livingston, 75 Mont. 173, 243 P. 569; 96 A. L. R. 798.

■ We think that the rule is applicable to the facts found in the case at bar. It is entirely immaterial that defendant acted in good faith and that the loss would have occurred though defendant had made the deposit in the name of his client. Many of the cases hold that the rule is inflexibly applicable because of the likelihood that where funds are deposited in the individual name of the trustee a mingling of funds may result and because of the right which the bank and others dealing with the funds would have to treat the same as the individual property of the trustee. Williams v. Williams, supra; St. Paul Trust Co. v. Kittson, 62 Minn. 408, 65 N. W. 74; School Dist. in Greenfield v. First Nat. Bank, 102 Mass. 174; Summers v. Reynolds, 95 N. C. 404; Cornet v. Cornet, 269 Mo. 298, 190 S. W. 333.

■ Defendant contends that the trial court erred in

holding that recovery was not barred by the statute of limitations. The question presented is whether the action was taken out of the operation of the statute by performance of services within six years prior to the commencement of the action. Defendant contends that the evidence with respect to the services performed in April, 1936, was not sufficient from which the court could find that there was an acknowledgment of the existence of a debt from which the law would imply a promise to pay the balance and as such toll the statute of limitations. In support of this contention defendant quotes from the case of McCarthy Bros. Co. v. Hanskutt, 29 S. D. 535, 137 N. W. 286, Ann. Cas. 1914D, 889, as follows:

"Part payment, to be effectual to interrupt statute of limitations, must be voluntary and free from any uncertainty as to identity of debt, and must be made and accepted as part of a larger debt, and under circumstances consistent with intent to pay the balance, the intent to be determined by jury; and the burden of proof is on plaintiff to show such intent."

The part payment need not be in money. The rendition of services pursuant to an agreement of the parties to apply compensation therefor on a debt or obligation may constitute a sufficient medium of part payment to interrupt the running of the statute. 37 C. J., Limitations of Actions, § 633; Sutherland v. MacLeod, 311 Mass. 295, 41 N. E.2d. 9, 139 A. L. R. 1378. No distinction in the application of the general rules of part payment as affecting the operation of the statute of limitations is made where the part payment ·is predicated upon services.

The evidence is that defendant offered to perform legal services and to allow charges therefor to be credited on plaintiff's claim. The expressions contained in defendant's letters written to the plaintiff to the effect that "if you have any work which you wish done, I shall be glad to take care of it for you * * * and let same apply on my check," "rest assured that I shall do everything in my power to make good on the check", "I realize my liability to you if

there was no delay on your part in sending the check through and that I must make good the loss" clearly have reference to the claim in controversy and are indicative of defendant's intention to credit the value of his services as partial payments on the obligation. Plaintiff's testimony is that he forwarded numerous matters to be handled by the defendant in reliance on the agreement between them. Defendant counterclaimed and was given credit for services rendered and disbursements made between February 15, 1924, and February 2, 1933. We think that the evidence warranted the court in finding that defendant performed the legal services in April, 1936, under the existing agreement or understanding of the parties. Defendant had not repudiated the agreement at the time of the rendition of these services and there is no circumstance to indicate an intention not to apply a reasonable and proper charge therefor as a part payment. Its effect was to toll the statute and enlarge the time within which an action upon the obligation could be commenced.

The judgment appealed from is affirmed.

WARREN, P.J., and POLLEY and RUDOLPH, JJ., concur.

SMITH, J., absent.