**In the Matter of the Discipline of George WEISENSEE, as an Attorney at Law.**

**No. 12729.**

Supreme Court of South Dakota.

Sept. 17, 1980.

R. James Zieser, Tyndall, for Disciplinary Board, The State Bar of South Dakota, for complainant.

George Weisensee, pro se.

WOLLMAN, Chief Justice.

Following receipt of a certified copy of an order adjudging George Weisensee (respondent) guilty of the offense of attempted disposal of mortgaged property, we entered an order pursuant to SDCL 16–19–37 on April 17, 1979, suspending respondent from the practice of law pending final disposition of disciplinary proceedings against him. Those proceedings having been completed, we now determine that respondent must be disbarred.

Respondent and one Conroy Langloss were charged by information with the crime of attempting to dispose of mortgaged property, a violation of SDCL 32–3–47. In pertinent part the information charged:

[T]hat on or about the 16th day of December, 1977, in the County of Minnehaha, State of South Dakota, George Weisensee and Conroy Langloss did commit the public offense of Attempting to Dispose of Mortgaged Property, a violation of SDCL 32–3–47 in that Conroy Langloss and George Weisensee did, knowingly, willfully, and with intent to defraud, attempt to permanently dispose of a 1977 Ford pickup, Vehicle Identification Number 484343862, by selling it to Marc Norlin, without having first obtained the written permission of Ford Motor Credit Corporation, who held a lien on that vehicle, and without discharging or performing the conditions imposed by that lien.

On September 11, 1978, respondent, accompanied by counsel, and Langloss appeared before the circuit court and waived preliminary hearing, whereupon the State offered to present a stipulation of facts prepared pursuant to a plea bargain agreed to by respondent. Before permitting the State to proceed, the trial court asked re-

spondent's counsel whether he would stipulate that the facts contained in the stipulation would be those adduced if the State went to trial, to which counsel replied:

BY MR. BURKE: Your Honor, I am fully aware and so is Mr. Weisensee. We have had first hand contact with the facts that the State is going to ask to be stipulated to and we will stipulate that if their witnesses were called in any sequence that they would testify in substance as Mr. Wilbur is going to state to the Court.

The State then read the following statement into the record:

BY MR. WILBUR: All right, Your Honor. The State would first prove that sometime in the first two (2) weeks in December, 1977, Mr. Marc Norlin, who is employed by a real estate agent in Sioux Falls and who is a part time policeman for the City of Sioux Falls, had a contact with Mr. George Weisensee concerning the purchase of a pickup at less than the usual rate. The State would also prove that on December 15, 1977, George Weisensee contacted Mr. Norlin and told him that he had such a pickup truck available. He expected the truck to be coming from Iowa that evening and would call Norlin back. On December 16th, Weisensee called Norlin at Dean Pearson Realty. They had another discussion concerning the vehicle and pursuant to that discussion they met at the Red Rock Lounge at the Airport Holiday Inn at 3:30 P.M. on December 16th. That afternoon we would prove that Mr. Weisensee, Mr. Norlin and Mr. Langloss met at the Holiday Inn. Upon arrival Mr. Weisensee inquired of Mr. Norlin if he was wired up or if he had any contact with the police officers. Mr. Norlin denied that. They then discussed the purchase of a vehicle. Langloss and Weisensee explained they were asking Twenty–Five Hundred ($2500.00) Dollars for the vehicle, which was a 1977 Ford One–Half (½) Ton Pickup, Four Wheel Drive. It was approximately two (2) months old at the time. They said they would take no checks. They wanted cash and at that time Mr. Weisensee stated that there was a prob-

lem with the title to the vehicle and Mr. Norlin would have to acquire a title by himself. There was some discussion concerning the fact that the pickup was "hot." Mr. Langloss suggested to Norlin that he bring a new set of license plates for the pickup because he was going to remove the plates that were on the pickup truck at the time of the sale. They agreed to meet at 6:00 P.M. with the vehicle for the inspection of the vehicle. Before that time Sioux Falls Police acquired Twenty Five Hundred ($2500.00) Dollars, had the money marked with fluorescent ink and recorded as to serial number. At 6:30 P.M. Mr. Norlin met Weisensee and Langloss at the Airport Holiday Inn and they then had some discussion concerning buying the pickup. They went outside to inspect it and pursuant to the inspection Mr. Norlin gave the Defendants Langloss and Weisensee nineteen (19) One Hundred ($100.00) Dollar bills and twelve (12) fifty ($50.00) Dollar bills and at that time Langloss took the money and Weisensee gave the pickup keys to Norlin. There were further statements by both Mr. Weisensee and Mr. Langloss concerning the fact that it would be best to have the pickup painted as soon as possible and the mud flaps should be removed because they are identifying characteristics. Pursuant to the vehicle changing hands the parties got up to leave and Officer Ed Flowers, Officer Hanson and Officer Clauson from the Sioux Falls Police arrested them. It was later determined that the pickup at the time was registered to Mr. Larry Vibbard and his wife, Shirley Vibbard, at Belmont, Iowa and that there was a lien on the pickup. The lien was held by Ford Motor Credit Corporation of Des Moines, Iowa, who had given no permission for the sale or other disposal of that vehicle. The State would also prove that Mr. Vibbard stated that he had, in fact, lended [sic] the pickup to Mr. Langloss. Pursuant to the arrest–let's see–both parties declined to make any statements. That would conclude the facts that the State

would elicit during it's [sic] case in chief, I believe.

Following a conference between respondent and his counsel, the following colloquy took place:

BY MR. BURKE: The Defendant wants me to be certain to point out that he is not admitting those are the facts. I guess the record should show that. We are stipulating only that that is what their witnesses would testify to if they were called.

BY THE COURT: I understand that but it is my understanding that this procedure of stipulating to the facts, that this is what their witnesses would testify, is in lieu of entering a plea to this charge and, of course, these facts would then be used by the Court, if it is to be done this way, for a basis of a finding of either guilty or not guilty. Isn't that correct?

BY MR. BURKE: That is correct.

BY THE COURT: So I don't want to get cross roads here. That—either he is stipulating that these are the facts that if these witnesses were to testify and that the Court can use these facts as a basis for entering any finding. Is that correct?

BY MR. BURKE: That is correct.

BY THE COURT: Is that correct, George?

BY MR. WEISENSEE: Yes, Your Honor.

The trial court then indicated that it had received a statement in the nature of a plea bargain that provided, among other things, that the State would dismiss the three grand theft charges and the conspiracy charge upon which respondent had been indicted and that in return for the reduction of the charge to a misdemeanor, respondent agreed to surrender to the Supreme Court his license to practice law.

On December 20, 1978, the trial court entered an order adjudging respondent to be guilty of the offense charged in the information. The order suspended the imposition of sentence against respondent and placed him on probation for a period of one year upon certain conditions, including the payment of a $500 fine, the payment of attorney fees and all outstanding checks, and the weekly attendance by respondent at Alcoholics Anonymous meetings.[1]

On November 8, 1979, the trial court entered an order modifying the December 20, 1978, order by eliminating the requirement of the payment of the fine and by providing that the period of probation should end on November 8, 1979. That same day the trial court entered an order dismissing the action and discharging respondent.

Following our order suspending respondent from the practice of law, we referred this matter to the Disciplinary Board of the State Bar (Board) for the institution of a formal proceeding relating to the extent of the final discipline to be imposed upon respondent. SDCL 16–19–39. The Board filed its report on May 3, 1979, recommending that respondent be disbarred. Following two extensions of time for answering granted to respondent's counsel, respondent on August 16, 1979, filed an answer on his own behalf. Respondent's counsel later withdrew as counsel of record.

A hearing on the Board's report and recommmendation was set for October 15, 1979. Respondent failed to appear on that date, however, and in lieu of an appearance tendered his resignation from the State Bar. Respondent was advised that in view of the pending disciplinary action the Court would not accept his resignation. The hearing on the Board's report and recommendation was then rescheduled for November 9, 1979.

Respondent appeared pro se at the November 9, 1979, hearing, representing to the Court that he had refrained from using alcoholic beverages since January of 1978 and that he had for some time been employed by River Park, an alcohol and drug

---

1. The order was entered pursuant to SDCL 23–57–4. That statute was repealed (1978 S.D. Sess.Laws ch. 178, § 577, effective July 1, 1979), and was replaced by SDCL 23A–27–13, 14, 15 and 16 as enacted (1978 S.D.Sess.Laws ch. 178, § 345) and amended (1979 S.D.Sess. Laws ch. 159, §§ 16A, 17). With some exceptions, SDCL 23A–27–13, 14, 15 and 16 are substantially identical to the repealed statute.

treatment center in Pierre, South Dakota, to establish programs in private industries to aid persons with alcohol or drug–related problems. He stated that the events giving rise to the charge on which he had been adjudged guilty had occurred while he was under the influence of alcohol and that he had been drinking heavily prior to the incident in question. He also referred to the action that the trial court had taken the preceding day to discharge the proceedings against him.

Following the hearing, we entered an order directing respondent to file with the Court an affidavit setting forth the facts regarding his employment with River Park and his abstinence from the use of alcoholic beverages. We also remanded the matter to the Board for its consideration of the additional factual matters that had been presented to the Court by respondent at the hearing and requested that the Board file a supplemental report and recommendation.

On January 22, 1980, the Board filed a supplemental report confirming the fact that respondent had abstained from the use of alcohol for some 22 months and the fact that respondent was employed by River Park. The report disputed respondent's representations to the Court that he was under the influence of alcohol at the time the offense was committed. The Board renewed its recommendation that respondent be disbarred.

On February 11, 1980, respondent filed a lengthy affidavit challenging the adequacy and the fairness of the Board's investigation and in effect denying his guilt of the charge that forms the basis of this proceeding.

On March 4, 1980, we granted the Board's request that the matter be continued to allow the Board to afford respondent an opportunity to appear before it.

Following a meeting with respondent on April 25, 1980, the Board on May 12, 1980, submitted to the Court a supplemental report recommending that respondent be suspended from the practice of law for one year, that he be given credit for the time he had already spent under suspension, and

that he then be reinstated upon the condition that for a period of five years respondent refrain entirely from the use of alcoholic beverages and that during that period he not commit any act that would constitute a violation of the Code of Professional Responsibility that would merit imposition of discipline pursuant to SDCL 16–19. The supplemental report set forth the Board's findings that for several years prior to the incident that led to his conviction on the charge in issue here, respondent had been a severe alcoholic; that respondent's actual knowledge of and participation in the events culminating in the criminal charges were not as culpable as would appear from the bare record; that respondent's counsel had specifically stated to the trial court at the time of the arraignment that the facts contained in the stipulation were not admitted to by respondent but constituted only what the State's witnesses would testify to; that respondent's agreement to the plea bargain was to a certain degree motivated by his alcoholism and with the understanding that upon the ultimate satisfactory compliance with the terms of probation his record would be sealed and purged and that he would not stand guilty of a serious crime. The Board also found that respondent had not used alcoholic beverages of any kind since February 1, 1978, and that he has been actively involved in alcoholic rehabilitation at River Park, first on a full–time basis and more recently, because of program reductions, on a part–time basis.

SDCL 16–19–33 provides in part that: The following shall similarly constitute misconduct and shall be grounds for discipline:

(1) Conviction of a crime as set forth in § 16–19–36. . . .

SDCL 16–19–36 provides in part: The term "serious crime" shall include any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime, involves improper conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure

to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a serious crime.

The statute that respondent was found guilty of having violated provides in part:

When the ownership of a motor vehicle . . . is subject to a chattel mortgage . . . it shall be unlawful, prior to the performance of the conditions contained in any of the above instruments and the discharge of the obligations imposed thereby, to intentionally or with intent to defraud, materially injure, destroy, conceal, sell, mortgage, or otherwise dispose of . . . a motor vehicle . . subject to any of the above instruments without first having received the written permission of the then owner or holder of such chattel mortgage . . .. Whoever shall violate this section shall be guilty of a Class 6 felony.

SDCL 32–3–47.

■ We think that there can be no serious question that a violation of the foregoing statute is a serious crime as that term is defined in SDCL 16–19–36. So also an attempt to commit a violation of that statute.

■ Respondent raised in his appearance before this Court on November 9, 1979, and in the affidavit filed on February 11, 1980, the contention that the dismissal of the proceedings against him by the trial court pursuant to SDCL 23A–27–14 in effect vitiated the disciplinary proceedings based upon his conviction. We do not agree.

SDCL 23A–27–13 provides that in certain cases the trial court may, without entering judgment of guilt, suspend the imposition of sentence and place a defendant on probation. SDCL 23A–27–14 provides that upon the completion of the conditions of probation, the court shall discharge the defendant. Such discharge and dismissal "shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime."

In *State v. Iverson*, 269 N.W.2d 390 (S.D. 1978), and *State v. Johnson*, 254 N.W.2d 114 (S.D.1977), we held that a plea of guilty resulting in probation without entry of judgment of guilt is not a conviction. Whatever our holding might have been had the trial court in the instant case elected not to adjudge respondent guilty, we are faced with the fact that the order suspending imposition of sentence contained the following adjudication of guilt:

JUDGMENT of this Court that the Defendant is GUILTY of Attempted Disposal of Mortgage [sic] Property in violation of SDCL 32–3–47.

Thus the holdings in the *Iverson* and *Johnson* cases are inapposite here. Likewise, whatever disqualifications and disabilities are released by an order of discharge and dismissal entered pursuant to SDCL 23A–27–14, the possible institution of disciplinary proceedings is not among them. See, e. g., *Meyer v. Board of Medical Examiners*, 34 Cal.2d 62, 206 P.2d 1085 (1949); *In re Phillips*, 17 Cal.2d 55, 109 P.2d 344 (1941); and *Patt v. Nevada State Bd. of Accountancy*, 571 P.2d 105 (Nev.1977).

The question, then, is the extent of the discipline to be imposed upon respondent.

Respondent was admitted to the practice of law in this state on January 30, 1957. He has practiced law in Sioux Falls since that time, serving as Minnehaha County State's Attorney from January 1969 to December 1972. This is respondent's second appearance before this Court in a disciplinary matter. See *In re Weisensee*, 88 S.D. 544, 224 N.W.2d 830 (1975). In that case, we held that under our disciplinary rules then in effect respondent's conviction in United States District Court on a charge of failing to file a federal income tax return did not necessarily constitute a crime involving moral turpitude. We therefore dismissed the proceedings against respondent.[2]

The principles governing the imposition of discipline upon an attorney were recently restated in *Matter of Voorhees*, 294 N.W.2d

---

2. Under our present rules, the willful failure to file an income-tax return is a crime that would constitute grounds for disbarment or suspension. SDCL 16–19–33; SDCL 16–19–36.

646 (S.D.1980). As we said in an earlier case:

> The purpose of a disciplinary proceeding is not to punish an attorney but to remove from the profession a person whose misconduct has proved him unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney . . . and for the purpose of protecting the public from further wrongdoing on the part of an attorney . . .. Disbarment is warranted when it is clear that the protection of society requires such action or when the maintenance of the respect due courts and judges or of the respectability of the legal profession itself demands such action. . . .

*In re Kunkle*, 88 S.D. 269, 295, 218 N.W.2d 521, 536 (1974) (citations omitted). See also *Matter of Parker*, 269 N.W.2d 779 (S.D. 1978); *Matter of Walker*, 254 N.W.2d 452 (S.D.1977); *In re Rude*, 88 S.D. 416, 221 N.W.2d 43 (1974).

■ We conclude that respondent's participation in the attempted disposition of the mortgaged vehicle can only be characterized as constituting dishonesty, misappropriation, and a form of theft. What the Court said in *Matter of Parker*, supra, is pertinent here:

> To determine whether discipline other than disbarment would be appropriate, the circumstances surrounding the conviction will be considered, i. e., whether the conduct involved dishonesty, fraud, deceit, or misrepresentation; whether the conduct is prejudicial to the administration of justice; whether the conduct adversely reflects upon the attorney's integrity, competency or fitness to practice law. The respondent here has not presented any evidence which would convince this court that the circumstances leading to his felony conviction did not involve such conduct.

269 N.W.2d at 780–781.

We are not unmindful that respondent's violation of the law may in large part have been precipitated by the circumstances resulting from his addiction to alcohol. We are also aware of the fact that it is the announced policy of this state that alcoholics be afforded treatment rather than to be subjected to criminal prosecution. SDCL 34–20A–1. But as we said in *Matter of Walker*, supra:

> This court cannot, however, under the guise of support of this policy condone misconduct on the part of an attorney on the grounds that he is an alcoholic anymore than it can condone misappropriation of clients' funds on the grounds of financial problems. To hold otherwise would wreak havoc with the process of disciplinary proceedings for not infrequently misconduct by attorneys appears to be attributable at least in part to the factor of alcoholism.

254 N.W.2d at 455.

Likewise, we cannot accept respondent's contention that he is innocent of the offense of which he was found guilty by the trial court. Respondent's answer to the trial court's careful, almost anticipatory, inquiry of respondent and his counsel concerning the import of the factual statement read into the record pursuant to the stipulation belies respondent's present posture vis-a–vis that statement.

Numerous affidavits and letters have been submitted in respondent's behalf by lawyers and lay persons alike. Our consideration for respondent's circumstances, however personally sympathetic we may be to his plight and however commendable may be his efforts to rescue himself and in helping to rescue others from the grip of alcoholism, must yield to the regard that we must have for the best interests of the legal profession and for the protection of the public. As we so recently said in *Matter of Voorhees*, supra:

> In an age where the legal profession is under heavy attack we must have regard for the image of the profession as a whole. A slap on the wrist for the clearly felonious handling of a business act which is cognitive of many acts that a practicing attorney has to perform daily

would not lend credibility to the high ethical standards of the profession. 294 N.W.2d at 648.

We conclude that respondent's conduct as manifested by the events that led to his conviction demonstrates that he is unfit to practice law. Accordingly, a judgment of disbarment will be entered.

MORGAN, J., and HALL, Circuit Judge, concur.

HENDERSON and FOSHEIM, JJ., dissent.

HALL, Circuit Judge, sitting for DUNN, J., disqualified.

HENDERSON, Justice (dissenting).

SDCL 23A–27–13 provides:

Upon receiving a verdict or plea of guilty for a misdemeanor or felony not punishable by death or life imprisonment by a person never before convicted of a crime which at the time of conviction thereof would constitute a felony in this state, a court having jurisdiction of the defendant, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby may, *without entering a judgment of guilt*, and with the consent of the defendant, suspend the imposition of sentence and place the defendant on probation for such period and upon such terms and conditions as the court may deem best. A court may revoke such suspension at any time during the probationary period and impose and execute sentence without diminishment or credit for any of the probationary period. (Emphasis supplied.)

In absolute contravention to this statute, the court in this case on December 20, 1978, did enter a judgment of guilt as reflected by these words:

JUDGMENT of this Court that the Defendant is GUILTY of attempted Disposal of Mortgage (sic) Property in violation of SDCL 32–3–47.

Thus, I would hold that the judgment of guilt on the original suspension of the imposition of sentence was void ab initio.

SDCL 23A–27–14 states:

Upon completion of the observance of all conditions imposed pursuant to § 23A–27–13, the court service worker assigned to defendant's case shall bring the matter to the attention of the court, whereupon the defendant shall be discharged by the court. A formal entry of such discharge shall be entered by the clerk of courts. Discharge and dismissal under this section *shall be without court adjudication of guilt* and shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime. Discharge and dismissal under this section may occur only once with respect to any person. (Emphasis supplied.)

As the record now stands, respondent has been convicted of absolutely no crime. As I read the majority opinion, it bases its disciplinary action upon the conviction of a crime under SDCL 16–19–33. The November 8, 1979, order provided:

Defendant in the above captioned matter having been found guilty based upon a stipulation of facts on the 15th day of November, 1978, of the offense of Attempted Disposal of Mortgaged Property, and the Court having suspended the imposition of sentence and have placed and the defendant on probation on the 15th day of November, 1978, pursuant to SDCL 23–57–4,

It appearing to the Court upon proper showing that the defendant has observed all the conditions of probation imposed by the Court,

IT IS ORDERED that the above–entitled action be, and hereby is, dismissed and the defendant discharged.

IT IS FURTHER ORDERED that all official records in this action be sealed, along with all recordation relating to the defendant's arrest, indictment or information, trial, and dismissal and discharge.

IT IS FURTHER ORDERED that a non–public copy of this ORDER be forwarded to the South Dakota Division of Criminal Investigation, Office of the Attorney General.

IT IS FURTHER ORDERED that the fingerprinting contributor request from the Federal Bureau of Investigation the return to the contributor of all fingerprint identifying data submitted to the Bureau for purposes of disqualifications or disabilities imposed by law for convictions of a crime.

It is to be noted that respondent and his counsel made it perfectly clear that they were not admitting to the facts alleged in the information and that respondent was not pleading guilty to the information. Particularly significant is that the lower court said: "So I don't want to get cross roads here. That—either he is stipulating that these are the facts that if these witnesses were to testify and that the Court can use facts as a basis for entering any finding. Is that correct?" Counsel for respondent answered: "That is correct." And the Court asked: "Is that correct, George?" Respondent answered: "Yes, your honor." The trial court had the right and duty to make a *finding* but did not have the right to adjudicate *guilt* which was in absolute derogation of the purpose of a suspended imposition of sentence and contrary to the understanding of respondent and his attorney before the trial judge. (Emphasis supplied).

Furthermore, there was a written plea bargain filed in the lower court on September 11, 1978. Paragraph three provides: "The State of South Dakota will state those facts which it would prove at trial in this matter. Defendant Weisensee will stipulate to those facts, and the court will reach its *finding* based upon them." (Emphasis supplied). Paragraph four of this joint plea bargain provided: "Defendant Langloss will plead guilty to the offense charged." Obviously, Weisensee plea bargained for the court to draw findings and Langloss plea bargained to entry of a guilty plea. Weisensee's plea bargain should not have been treated, as it was below, as a plea of guilt. This lawyer has the right to rely on a plea bargain not unlike any other citizen.

In fairness to this lawyer, I wish to point out three findings by the Disciplinary Board in arriving at its recommendation for a suspension from the practice of law for one year:

3. That at the time of the respondent's appearance in Court for the purpose of entering the plea to the charges against him, his attorney specifically stated that the facts posed by the stipulation were not admitted to by the respondent but only that those facts were what the State's witnesses would testify to.

4. That the respondent's agreement to a plea bargain which would give him the suspended imposition of sentence was to a certain degree motivated by his realization that he was a severe alcoholic and was physically very ill and with the understanding that upon his satisfactorily complying with the sentence of the Court that his record would be sealed and purged and he would not then be guilty of a serious crime which would result in his disbarment.

5. That the respondent's agreement to turn over his license to practice law to the Supreme Court was understood by the respondent to apply only to his period of probation and that he would be able to request reinstatement upon satisfactorily complying with the conditions of his sentence.

If the "conviction" falls and if there was no finding, and there was not, then what remains to disbar this attorney? If the answer is alcoholism, then the record overwhelmingly shows that his addiction has terminated, as Justice Fosheim points out. If my premise is correct, there is absolutely no presumption of unfitness. The prime purpose of the suspended sentence statutes in this state is to provide a means for nonconviction of a defendant. I do not find the two California cases and the Nevada case cited by the majority opinion to be compelling authority in view of our state statutes. The California statutes differ from ours and the Nevada case piggybacks the California rationale. The pertinent section of the California Business and Professions Code is 6101 which provides:

Conviction of a felony or misdemeanor, involving moral turpitude, constitutes a cause for disbarment or suspension as provided in section 6102. The record of conviction shall be conclusive evidence . . . . A plea of or verdict of guilty is deemed to be a conviction within the meaning of this section.

Our statutes do not mandate disbarment upon a conviction.

The majority opinion rests its case, I believe, on this so–called "conviction;" without it, there is no case against the respondent. By the majority opinion, respondent's "unfitness" is inextricably aligned with his "conviction." Therefore, I would dismiss the disbarment proceeding in totality.

FOSHEIM, Justice (dissenting).

As the majority opinion notes respondent's offense may in large part have been precipitated by the circumstances resulting from his addiction to alcohol. In *Matter of Walker*, 254 N.W.2d 452 (S.D.1977), we properly refused to condone an attorney's conduct on those grounds. Here, however, upon realizing his problem and where it had taken him, respondent sought and received treatment. It appears he has now successfully abstained from the use of alcohol for over two years. Furthermore, he has become actively involved in programs to aid persons with alcohol or drug–related problems.

When it comes to the discipline to be imposed, I distinguish the circumstances here, for example, with the demonstrated dishonesty of an attorney who misappropriates his client's funds. In the latter case, the lawyer is an out–right thief and there is no point in time when we can protect society with reasonable assurance that he is not likely to repeat his character weakness. On the other hand, before reverting to errors attributable to drinking, an alcoholic is likely to signal a relapse.

It seems to me that the May 12, 1980, supplemental report of the Board recognized this when they mellowed their previous recommendation of disbarment to a one–year suspension with credit for the time already spent under suspension. In view of the circumstances, disbarment appears unduly harsh and fails to lend appropriate encouragement to respondent's gallant rehabilitation efforts. I prefer accepting the Board's recommendation to suspend, but, as an added safeguard, the suspension should be for three years with the recommended credit. Respondent's sobriety should in the meantime be monitored.