In the Matter of the Discipline of RUDE

(221 N.W.2d 43)

(File No. 11186. Opinion filed August 28, 1974)

Walter W. Andre, Asst. Atty. Gen., Pierre, for State.

Robert F. LaFleur, Rapid City, for respondent.

ORIGINAL PROCEEDING

WOLLMAN, Justice.

Following a report and recommendation by the Grievance Committee of the State Bar of South Dakota, which recommended that disciplinary proceedings be instituted against David O. Rude (hereinafter referred to as respondent) for alleged unprofessional conduct as an attorney, this court issued an order on August 16, 1972, pursuant to SDCL 16-19-8, directing the Attorney General to prepare and file a formal complaint against respondent. Subsequently, the Honorable Philo Hall, one of the judges of the Fifth Judicial Circuit, was appointed as Referee pursuant to SDCL 16-19-16 to take and hear the testimony in the

matter and to make and file with the court findings of fact and recommendations thereon.

The Referee conducted a hearing on December 20, 1972, at which respondent appeared with counsel. On May 30, 1973, the Referee submitted his findings of fact to this court, together with his recommendation that respondent be suspended from the practice of law.

On June 27, 1973, a hearing on the Referee's findings and recommendation was held in this court. Respondent appeared at the hearing without counsel and attempted to dispute certain of the findings, although he had filed no written objections thereto.

While the matter was under advisement, we were informed that respondent may have committed acts constituting unprofessional conduct as an attorney subsequent to the date of the hearing before the Referee. We asked the Attorney General to investigate the report of additional acts of unprofessional conduct. Because it was necessary for us to ask that further investigation be made following the Attorney General's initial investigation of the alleged additional acts of misconduct, it was not until April of 1974 that an amended complaint was filed against respondent. Such amended complaint, to which respondent filed no answer, was filed on April 17, 1974. A hearing on the amended complaint was held on June 12, 1974, before Judge Hall. Although full and adequate notice of this hearing had been given to respondent, he chose not to appear at the scheduled time and made a belated appearance after the Attorney General's case had been presented. [1] On July 3, 1974, the Referee filed his supplementary findings of fact with this court, together with his recommendation that respondent be permanently disbarred. Respondent filed no objections to the supplementary findings. A hearing was held in this court, at which respondent appeared through counsel, on the supplementary findings and recommendation on July 24, 1974.

We summarize the original and the supplementary findings of the Referee, which we find to be amply supported by the evidence, as follows:

---

1. His counsel appeared at the appointed time and took part in the hearing.

## ORIGINAL FINDINGS

Respondent, who was 32 years of age at the time of the December 1972 hearing, was graduated from the University of North Dakota School of Law in 1964; he was admitted by examination to the practice of law by this court on October 8, 1964. Following his graduation from law school, respondent worked for an insurance company in Sioux Falls, South Dakota, for approximately seven months, after which he moved to Rapid City, South Dakota, where he was employed as Deputy State's Attorney of Pennington County until 1970. Since 1970 respondent has been engaged in the private practice of law as a sole practitioner in Rapid City. He was described by judges and fellow lawyers as a capable, talented, reliable lawyer.

Respondent represented one Van E. Harmon of Evansville, Wyoming in a claim arising out of contract. After commencing litigation, respondent agreed to settle the case for $800 on behalf of his client. Payment was made by a check in the amount of $800, dated April 26, 1971, and endorsed to the David O. Rude trust account. On April 28, 1971, the check was deposited in the First National Bank of the Black Hills, $550 thereof in the David O. Rude trust account and $250 in the David O. Rude office account in the same bank. The check was returned because of insufficient funds, and the David O. Rude trust account was charged by the bank for the amount of the check, thus overdrawing that account. Respondent promptly notified Mr. Harmon that the check had been returned because of insufficient funds. Although the same check was again deposited on May 11, 1971, and credited to the David O. Rude office account, Mr. Harmon was not notified of this fact. Respondent did not remit to Mr. Harmon his net portion of the settlement recovery and at subsequent times did not have sufficient funds to do so. Mr. Harmon made complaint to the Secretary of the State Bar and letters were sent to respondent by the Grievance Committee. Respondent did not respond to the communications from the Grievance Committee and did not pay Mr. Harmon until the day before the hearing of his disciplinary proceeding before the Referee, at which time he paid the entire $800 to Mr. Harmon without any deduction for attorney's fees and costs.

On November 19, 1971, respondent obtained $50 in cash from one Roman Kurylas of the Imperial 400 Motel in Rapid City by giving a personal check in that amount to Mr. Kurylas. After making many unsuccessful attempts to collect the $50 from respondent, Mr. Kurylas finally made complaint to the Grievance Committee. At the hearing before the Referee Mr. Kurylas testified that his wife had received a phone call from Mr. Kurylas' attorney on the morning of the commencement of the Referee's hearing, notifying her that the $50 check had been "made good."

The trust account and business account of respondent with the First National Bank of the Black Hills in Rapid City, South Dakota, were on numerous occasions overdrawn and respondent's checks on those accounts were charged as overdrafts or returned as insufficient fund checks. The trust account was closed by the bank on August 18, 1971, and the status of respondent's business account with the bank in July and August of 1971 was such that checks presented for payment were almost universally returned for lack of sufficient funds; this account was dropped from the bank records on January 4, 1972. The records of respondent's account with the National Bank of South Dakota in Rapid City, South Dakota, for the period from May 19, 1972 to December 15, 1972, reveal that on numerous occasions the account was overdrawn.

Respondent, who had been issued a South Dakota Retail Occupational Sales Tax license, failed to make quarterly returns of his gross receipts or to pay or remit the occupational sales tax for the July-August-September 1971 period and the October-November-December 1971 period. Respondent's sales tax license was revoked as of November 15, 1971, and thereafter he continued to engage in the practice of law without such license and failed and neglected to file reports or returns of gross receipts or to pay any retail occupational sales tax. Proceedings were commenced by the Commissioner of Revenue of the State of South Dakota, as a result of which an order was issued by the circuit court restraining respondent from engaging in business as an attorney for the period from April 10, 1972 to May 1, 1972.

Respondent, while continuing the practice of law in the state of South Dakota during the year 1972, did not pay his dues as a member of the State Bar of South Dakota for the calendar year 1972 until November 3, 1972, in violation of Section 23 of the By-Laws of the State Bar.

## SUPPLEMENTARY FINDINGS

On June 27, 1973 (the day of the hearing in this court on the Referee's original findings and recommendation), respondent issued his check in the amount of $30 to "Jerry's," a steak house in Philip, South Dakota. Payment was refused by the drawee bank because of insufficient funds.

On July 11, 1973, respondent entered a plea of guilty to a charge of reckless driving in the Municipal Court at Rapid City, South Dakota on behalf of a client. In payment of the $50 fine imposed upon his client, respondent issued his check in the amount of $50 payable to the Municipal Court and was issued a receipt ·by the clerk showing payment of the fine by the client-defendant. Payment was refused by the drawee bank because of insufficient funds.

On July 20, 1973, respondent issued his check in the amount of $30 to the Canyon Lake Club, Rapid City, South Dakota. Payment was refused by the drawee bank because of insufficient funds.

In addition to these findings, the Referee found that respondent has a problem with alcohol and that his excessive drinking, which started prior to the December 1972 hearing, had continued to the time of the June 1974 hearing. The Referee found that respondent had been under a great deal of emotional pressure while awaiting this court's decision in his case; that he plans to seek help and treatment for his alcohol problem; and that he is presently unable to manage his financial affairs.

Disciplinary Rule 1-102, "Misconduct," states that: "(A) A lawyer shall not: * * * (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. * * * (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

■ Paragraph (A) of Disciplinary Rule 9-102, "Preserving Identity of Funds and Property of a Client," provides that subject to certain exceptions, all funds of clients shall be deposited in an identifiable bank account in which no funds belonging to the lawyer shall be deposited. Paragraph (B) of Disciplinary Rule 9-102 states that: "A lawyer shall: * * * (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive." The commingling of and failure to account for a client's funds in violation of this rule is grounds for revocation of an attorney's license. Committee on Professional Ethics and Conduct v. Sturek, Iowa, 209 N.W.2d 899.

These disciplinary rules are part of the Code of Professional Responsibility, which was adopted as the rules of professional conduct by the State Bar on June 20, 1970, and approved by this court on July 21, 1970. The willful violation by an attorney of these rules constitutes a sufficient cause for revocation or suspension of an attorney's license. SDCL 16-19-2(5). See also SDCL 16-18-23, which makes it a misdemeanor for an attorney who receives the money or property of his client in the course of his professional business to refuse to pay or deliver it in a reasonable time after demand.

■ At the Referee's hearing and again before this court respondent stated that he had failed to respond to the repeated communications from the Grievance Committee because he did not have funds with which to pay Mr. Harmon and Mr. Kurylas and did not want to reply to the Grievance Committee until he had taken care of the matters. We find this purported explanation to be totally unacceptable. The members of the Grievance Committee perform a difficult and all too often thankless task in investigating charges of professional misconduct against their brother lawyers. In this instance the members of the Committee gave respondent several opportunities to appear before the Committee and offer his explanation regarding the charges that had been made against him, opportunities that he spurned. We consider respondent's failure to respond to the communications from the Grievance Committee to be indicative of his attitude towards the serious nature of the complaints lodged by Mr.

Harmon and Mr. Kurylas. Lest anyone consider that the consequences of failing to reply to the Grievance Committee are singularly visited upon respondent, let this opinion be fair notice that similar inexcusable failures to respond will count heavily in any subsequent formal disciplinary proceedings brought against an attorney. Cf. In Re Foy, 62 S.D. 23, 250 N.W. 671. He acts at his peril who treats a communication from the Grievance Committee with the indifference accorded an unsolicited invitation to join a book club.

Respondent has attempted to excuse his conduct by pointing out that his difficulties stemmed from the fact that his income fell woefully short of that needed to support his growing family. He also points to the failure of the State Bar to educate and advise young lawyers who are entering the practice of law as sole practitioners about financial matters.

 While we are not unappreciative of, nor insensitive to, the problems that confront the young, inexperienced attorney who seeks to establish a sole practice, financial problems *per se* are not an excuse for the manner in which respondent conducted his professional affairs with respect to the matters here in question. We recognize that anyone undertaking to practice alone in this day of soaring office overhead embarks upon a course fraught with hazards. Indeed, he faces a life-long pharaonic indentureship to publishing companies, office equipment companies, importunate landlords and a host of other claimants to what must of necessity be a modest income, at least in the early years of his practice. Financial problems, however, do not excuse nor do they justify a course of conduct in the handling of a client's funds that leads to the misallocation or withholding, however temporary, of such funds. Nor can the attorney escape censure by pleading ignorance of his financial affairs or by pointing the finger of guilt at his employees. He is bound to conduct the affairs of his office in such a manner that his clients' funds are safeguarded and promptly remitted. Likewise, no plea of hardship can excuse the issuing of insufficient fund checks, especially where, as in the instant case, a pattern of insufficient fund checks is established.

With respect to the finding that respondent has been under a great deal of emotional strain while awaiting our decision in his case, it should be noted that the three insufficient fund checks described in the supplementary findings were written within a month of the hearing in this court on the original findings, hardly an excessive length of time for any court to devote to the studied deliberation of the proper disposition of a case involving the future of an attorney's professional career. It was respondent's own conduct that precluded this court from rendering a decision on the original findings, a decision that was under consideration and in the process of preparation at the time we received the information regarding respondent's post-hearing misconduct.

At the hearing before this court on the supplementary findings, respondent's counsel referred to the policy expressed in Ch. 240, Laws of 1974, which reads as follows:

"It is the policy of this state that alcoholics and intoxicated persons may not be subjected to criminal prosecution because of their consumption of alcoholic beverages but rather should be afforded a continuum of treatment in order that they may lead normal lives as productive members of society."

Counsel suggested that it would be within the policy expressed by the legislature and good common sense for the court to place a condition upon a suspension from practice that would permit respondent to be reinstated to the profession upon his overcoming his drinking problem.

The purpose of disciplinary proceedings is not to punish but to remove from the profession those attorneys whose misconduct has proved them unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney so that the public may be protected from further wrongdoing. In Re Kunkle, 88 S.D. 269, 218 N.W.2d 521, and cases cited therein. Although it is to be hoped that respondent will overcome his problem with alcohol, it is the primary duty of this court to protect the public and to uphold the standards of the profession by taking such disciplinary action as is appropriate, notwithstanding the fact that the results of such action may be serious indeed for the disciplined attorney and the members of his family.

We need not and do not decide whether the findings with respect to respondent's failure to report his gross receipts and pay the required sales tax thereon or his failure to pay his dues promptly to the State Bar would constitute grounds for disciplinary action. We note that administrative sanctions are available by which the Department of Revenue can revoke an attorney's sales tax license, as it did in the instant case. We do not, however, minimize the seriousness of respondent's action in continuing to engage in the practice of law after his sales tax license had been revoked.

Section 23 of the By-Laws of the State Bar provides that any member of the State Bar who fails to pay his dues when such become due is automatically suspended from membership in the State Bar. This suspension can be enforced rather quickly by the members of the judiciary by their refusing to permit an attorney so suspended to appear in any of the courts of this state.

During his appearance before this court at the hearing on the original findings and recommendation, respondent displayed an attitude of belligerence and defiance towards the court. Respondent's attitude towards the court, his almost immediate violation of his promise to the court to avoid future acts of misconduct, his earlier indifference to the communications from the Grievance Committee, his subsequent failure to file an answer to the amended complaint, and his affront to the Referee by appearing at the hearing at times of his own choosing, weigh heavily against the plea that we exercise leniency in imposing discipline.

We conclude that respondent's conduct in mishandling the $800 settlement proceeds and in issuing the several insufficient funds checks, when viewed in the light of his above described attitude of belligerence and defiance towards this court and to the Referee and his indifference to the inquiries from the Grievance Committee, establishes respondent's present unfitness to continue as a member of the profession.

Judgment of disbarment will be entered.

All the Justices concur.