**In the Matter of the DISCIPLINE OF Samuel W. CRABB, as an Attorney at Law.**

**No. 15857.**

Supreme Court of South Dakota.

Argued Oct. 14, 1987.

Decided Dec. 9, 1987.

R. James Zieser, Disciplinary Bd. of the State Bar Ass'n, Tyndall, for complainant.

Joseph M. Butler and Allen G. Wilson of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for respondent.

Samuel W. Crabb, Rapid City, pro se.

MORGAN, Justice.

This is an original proceeding under this court's jurisdiction to discipline attorneys, pursuant to SDCL ch. 16–19. The proceedings were commenced after the Disciplinary Board of the South Dakota Bar (Board) investigated a number of complaints against Samuel W. Crabb (Crabb), and filed a preliminary report of its findings and recommended formal proceedings toward the proposed disposition of disbarment.

Crabb was admitted to practice before the Bar of this state on March 12, 1956, and since that time, subject to the exceptions and restrictions hereafter specifically noted, has been in the active practice of law in the State of South Dakota. This is the third time during that thirty-one-year period that Crabb has been before this court on disciplinary matters. In 1974, he was first before us for the offense of withholding a client's money. That offense resulted in a six-month suspension.

Thereafter, in 1976, Crabb was again before this court charged with gross neglect in various aspects: handling clients' trust funds, failure to meet statute of limitations deadlines, untimely delay in getting out work, and failure to respond to grievance committee inquiries. In that proceeding, this court determined that Crabb should not be in the private practice of law due to his inability to efficiently and expeditiously handle the legal affairs of his clients. The matter was deferred for a period of one year upon the terms of a letter of agreement, consented to by Crabb, which required that Crabb discontinue the private practice of law by July 1, 1977, and close all open files in his office or transfer them to other attorneys. However, he was not prohibited from seeking or being employed by any public or private corporation or governmental entity. At the end of the year the deferral was continued for two more years, again with Crabb's consent. At the end of that period, this court, being unaware of any continuing problems, dismissed the proceedings.

The formal charge against Crabb in this proceeding falls into three principal categories. The first is with respect to violations of DR 1–102(A)(1), violation of a disciplinary rule, and DR 6–101(A)(3), neglect of a legal matter entrusted to him. The charge lists twenty specific cases (mostly estates, summary probates and guardianships) where it is alleged that Crabb was neglectful. The second category involves violations of SDCL 16–19–54, failure to respond to Board's inquiries, which regard five of the cases included in the first category. The third category involves violations of DR 1–102(A)(6), conduct that adversely reflects on his fitness to practice law. The first such violation involves failure to timely file sales tax returns for most of the

quarters during 1985 and 1986. The second violation involves issuance of insufficient funds checks in payment of sales taxes due on three different occasions in 1985 and 1986. It is noted that failure to file a return within thirty days of due date and failure to pay tax due within thirty days of due date two or more times in any twelve-month period constitutes a Class 6 felony. When Crabb was indeed charged with a felony for his violations, he managed to plea bargain it down to a misdemeanor to which he pleaded guilty.

Because Crabb did not dispute any of the charges, this court deemed appointment of a referee to be unnecessary and the matter was brought on for formal hearing. Board was represented by counsel and Crabb appeared in person and by counsel. There being no factual dispute, the sole question before us is the disposition to be made.

While Crabb does not seriously dispute any of the charges, he would down-play the effect of some of his neglectful acts as regards damage to his clients. In one instance, he has confessed judgment to the client, which judgment remains unsatisfied, and in another he has deposited a sum of money to cover the client's loss if the case cannot be reopened to permit the client to persue her remedy. He attributes his problems with filing and paying sales taxes to the lack of adequate secretarial help to keep his books in order. The thrust of Crabb's presentation, however, was to again acknowledge that he is unable to manage a private law practice alone and to suggest an alternative to disbarment. Crabb and his counsel suggest what can best be termed a "unique" arrangement, whereby two very reputable Rapid City attorneys have pledged the efforts of themselves and their firms to supervise timely disposition of Crabb's present open files and to oversee Crabb's acceptance of clients in the future. Board, on the other hand, strongly recommends disbarment.

As we have acknowledged, in numerous disciplinary proceedings in the past,

> the purpose of disciplinary proceedings is not to punish but to remove from the profession those attorneys whose misconduct has proved them unfit to be entrusted with duties and responsibilities belonging to the office of an attorney so that the public may be protected from further wrongdoing. Disbarment is warranted when it is clear that the protection of society requires such action or where the maintenance of respect for courts and judges or the respectability of the legal profession itself demands such action.

*Matter of Walker,* 254 N.W.2d 452, 455 (S.D.1977) (citations omitted). *See, also, Matter of Kintz,* 315 N.W.2d 328 (S.D. 1982); *Matter of Weisensee,* 296 N.W.2d 717 (S.D.1980).

In the light of the foregoing precedent, we then examine the various delinquencies of which Crabb is guilty. We are first struck by the number of cases where Crabb has undertaken representation of clients and wholly failed to proceed to expeditious disposition. One was apparently contracted in 1977, when he was supposedly under constraints to close out his practice and take no further cases privately. The other nineteen were contracted during the period of 1981, shortly after the immediate prior proceeding was dismissed, to April of 1986, shortly before investigation was begun by the Disciplinary Board. Not only are we disturbed by the similarity to the record before this court in the previous proceeding, but we are further disturbed by the fact that although Crabb indicated in earlier answers to the Board's charges that he would have certain of the matters cleared up and closed by specific dates, it was represented to the court at the hearing, by counsel for Board, that such matters had not been cleared up or closed although the dates had passed. Crabb did not deny the truth of that allegation. Just as in the case of the promises to his clients to represent them, he has now reneged on his promise to this court. We find little support for his proposal for rectification in his conduct, past and present.

The second category of offenses, failure to respond to the Board's inquiries, has always been dealt with severely. As we

noted in *In Re Rude*, 88 S.D. 416, 422–23, 221 N.W.2d 43, 47 (1974):

> The members of the [Disciplinary Board] perform a difficult and all too often thankless task in investigating charges of professional misconduct against their brother lawyers.... We consider respondent's failure to respond to the communications from the [Disciplinary Board] to be indicative of his attitude towards the serious nature of the complaints lodged [against him]. Lest anyone consider that the consequences of failing to reply to the [Disciplinary Board] are singularly visited upon respondent, let this opinion be fair notice that similar inexcusable failures to respond will count heavily in any subsequent formal disciplinary proceedings brought against an attorney. (citation omitted) He acts at his peril who treats a communication from the [Disciplinary Board] with the indifference accorded an unsolicited invitation to join a book club.

In furtherance of this message, this court has, by adoption of rules, provided that failure of an attorney to respond promptly and appropriately may subject him to private reprimand by the Board, or, after a show cause hearing, discipline by this court. SDCL 16–19–54.

We now turn to the sales tax defalcations. In *Rude*, the charges against Rude for failure to file and pay sales tax returns was brushed over rather lightly, perhaps appropriately so in light of the other charges against Rude. Board brought the charges against Crabb under DR 1–102(A)(6), engaging in conduct that adversely reflects on his fitness to practice law, rather than under SDCL 16–19–33(1), conviction of a crime. In *Rude*, the court determined that they need not and did not decide "whether [Rude's] failure to report his gross receipts and pay the required sales tax thereon ... would constitute grounds for disciplinary action." 88 S.D. at 425, 221 N.W.2d at 48.

We do not view Crabb's tax defalcation so lightly, because it borders on embezzlement of funds received from clients in payment of sales tax, which monies Crabb, in effect, holds in trust for remittance to the State. Considering the amount of sales tax now being charged for state and local entities, that can amount to a tidy sum. We therefore determine that the administrative sanctions suggested by the *Rude* decision are not an adequate answer. In this case, the problems apparently lasted for two years. The State finally sought and received satisfaction through instituting a criminal prosecution. That such proceedings would be necessary must certainly reflect adversely on Crabb's fitness to practice law.

Returning then to the question before us, the determination of an appropriate discipline, "[w]e must keep in mind that the real and vital issue to be determined in disbarment proceedings is whether or not the accused, from the whole evidence as submitted, is a fit and proper person to be permitted to continue in the practice of law." *In Re Weisensee*, 88 S.D. 544, 546, 224 N.W.2d 830, 831 (1975). We are reluctantly left with the deep and firm conviction that Crabb does not qualify to continue in the practice of law. It is our duty to protect the public from attorneys who will so willingly accept representation of a client and, yet, consistently fail to give those clients timely service necessary to bring the cases to fruition.

Accordingly, judgment of disbarment will be entered effective as provided in SDCL 16–19–77.

All the Justices concur.