In the Matter of the DISCIPLINE OF Donald KALLENBERGER, as an Attorney at Law.

No. 17873.

Supreme Court of South Dakota.
Original Proceeding
Argued Sept. 1, 1991.
Decided Dec. 9, 1992.

R. James Zieser, Tyndall, for complainant Disciplinary Board.

Jack R. Von Wald, Selby, for respondent Kallenberger.

SABERS, Justice.

The sole issue in this original proceeding is the appropriate discipline to be imposed.

### FACTS

Donald Kallenberger (Kallenberger) was admitted to the practice of law in South Dakota on May 14th, 1979. He was in private practice and a State's Attorney through 1988. After being defeated as State's Attorney, Kallenberger continued in his practice as a sole practitioner in Eureka, South Dakota.

In February, 1992, Kallenberger was convicted of Failure to File Sales Tax Return (SDCL 10–45–48.1(4)), a Class I misdemeanor.[1] A disciplinary action was commenced[2] and the Supreme Court referred the matter to the Disciplinary Board of the State Bar (Board) for a report and recommendation.

1. SDCL 10–45–48.1 provides:
   Any person who:
   . . . .
   (4) Fails to file a return ... within thirty days from the date the return is due is guilty of a Class I misdemeanor[.]

2. SDCL 16–19–36 provides:
   The clerk of any court in this state in which an attorney is convicted of a serious crime shall within ten days of said conviction transmit a certificate thereof to the Supreme Court. The term "serious crime" shall include any felony and any lesser crime a necessary element of which, as determined by the statutory

The Board met April 3, 1992. Kallenberger testified that he began experiencing financial problems in 1989.[3] From January, 1989 through December, 1991, Kallenberger was consistently late in filing sales tax returns. The delinquencies varied from 1 to 126 days. The amounts varied as well. From May, 1989 through December, 1991, Kallenberger filed only 2 returns in a timely manner. Eight returns were delinquent 10 days or less and 15 returns were over thirty days past due.

On September 26, 1989 and January 18, 1990, John Lomheim (Lomheim), a Tax Program Representative of the Division of Sales and Use Tax of the South Dakota Department of Revenue, attempted to visit Kallenberger at his office to discuss the delinquent taxes. On both occasions, Kallenberger was not present and Lomheim left a message for Kallenberger to call him, which Kallenberger did on at least one occasion. Kallenberger was informed that by statute, reporting over 30 days late 2 times in any twelve-month period is a Class 6 felony and delinquent status itself is a Class 1 misdemeanor. (Lomheim Aff. paragraph 3).

Attorney General Roger Tellinghuisen (Tellinghuisen) wrote Kallenberger June 6, 1990 to inform him that the Attorney General's Office had been asked to authorize Kallenberger's prosecution for delinquent sales taxes. Tellinghuisen offered, in his letter, to give Kallenberger a final opportunity to comply with the tax laws. According to the letter, Tellinghuisen granted continuing authorization for the use of criminal sanctions should Kallenberger fail to remain current. Although Kallenberger

or common law definition of such crime, involves improper conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, wilful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a serious crime.

3. Kallenberger's own testimony indicated some of the delinquencies occurred during his term as State's Attorney, with the last two sales tax reports of 1988 not having been submitted until January 25, 1989.

does not recall either the receipt of Tellinghuisen's letter or the reading of it, his signature appears on the certified mail return receipt dated June 7, 1990.

Glen Johnson, of the Board, contacted Kallenberger by letter on July 12, 1991 regarding the appearance of Kallenberger's name on the sales tax delinquency list. At this time, Johnson informed Kallenberger that the *board considered sales tax collected from clients money held in trust for the state.* In response to Johnson's letter, Kallenberger remedied the sales tax arrearages. He continued, however, to file sales tax returns late throughout 1991.

In September, 1991, Kallenberger spoke with Tim Weber, an attorney with the Department of Revenue. Kallenberger and Weber became associated during the early to mid–1980's when they both occupied positions as County State's Attorneys. When Weber accepted the position of attorney for the Department of Revenue, Kallenberger was appointed to complete Weber's term as McPherson County State's Attorney. At that time, Kallenberger purchased a computer from Weber. Kallenberger and Weber's friendship continued after Weber accepted the position, and they communicated regularly.

Kallenberger called Weber in September primarily to discuss a problem he was experiencing with the computer. During this conversation Kallenberger "mentioned" his sales tax delinquencies and the letter from the Board. He was informed "that the department routinely worked with people on sales tax payments and that (he) should keep (Weber) informed ..." Hr'g Tr. 10. Kallenberger contacted Weber in October, 1991 at which time he was again informed of the Department's policy of working with delinquent taxpayers. In January, 1992, when Kallenberger was served with a complaint for delinquent sales taxes for October and November, he again called Weber. Kallenberger asked Weber to contact the state's attorney regarding his prior conversations with Weber concerning the department's history of working with people. Kallenberger then met with the state's attorney, who felt that the charges could not be dismissed completely because the complaint also cited a felony.

Kallenberger pled guilty to Failure to File Sales Tax Return. He was sentenced by the Circuit Court of McPherson County on February 4, 1992, placed on 18 months of probation, and ordered to remain current on his sales tax return. The Board recommended that Kallenberger be disciplined by private reprimand.

## DECISION

In determining the appropriate disciplinary action to be imposed,[4] we must keep in mind the goal of disciplinary proceedings. "In disciplinary proceedings, this court strives to protect the public from fraudulent, unethical, or incompetent practices by attorneys and preserve the image and integrity of the legal profession as a whole." *In re Discipline of Johnson,* 488 N.W.2d 682, 684 (S.D.1992), *reh'g granted,* September 16, 1992 (citing *In re Discipline of Simpson,* 467 N.W.2d 921 (S.D.1991); *In re Discipline of Pier,* 472 N.W.2d 916 (S.D. 1991)). While the Board has recommended that Kallenberger be disciplined by private reprimand, "[w]e need not give deference to the Board's recommendation for sanctions. The ultimate decision for discipline of members of the State Bar rests with this Court." *In re Discipline of Pier,* 472 N.W.2d 916, 917 (S.D.1991) (citing *In re Discipline of Stanton,* 446 N.W.2d 33 (S.D.

---

4. SDCL 16–19–35 provides:
   Misconduct shall be grounds for:
   (1) Disbarment by the Supreme Court;
   (2) Suspension by the Supreme Court for an appropriate fixed period of time, or for an appropriate fixed period of time and an indefinite period concurrently or thereafter to be determined by the condition imposed by the judgment. No suspension shall be ordered for a specific period in excess of three years;
   (3) Placement on a probationary status by the Supreme Court for a stated period, or until further order of the Court, with such conditions as the Court may specify;
   (4) Public censure by the Supreme Court; or
   (5) Private reprimand by the disciplinary board.

1989); *In re Discipline of Dana*, 415 N.W.2d 818 (S.D.1987)). These facts indicate a stronger sanction is in order.

According to Kallenberger, his repeated failure to file a sales tax return in a timely manner was due to an insufficient cash flow. He attributes this problem to a series of repair costs, along with difficulties encountered cultivating his practice after being defeated in re-elections for State's Attorney. This court noted in *In re Discipline of Rude*, 88 S.D. 416, 221 N.W.2d 43 (S.D.1974) that "[f]inancial problems, however, do not excuse nor do they justify a course of conduct in the handling of a client's funds that leads to the misallocation or withholding, however temporary, of such funds." *Id.* at 47–48.[5]

While Kallenberger did not withhold these funds from clients, he did withhold them from the State of South Dakota. Kallenberger claims that he was unaware of "the concept that sales tax was money held in trust for the state[.]" (Letter from Kallenberger to Chief Justice Miller of May 5, 1992, at 1). This "concept", however, was recognized by the court in *In re Discipline of Crabb*, 416 N.W.2d 258 (S.D.1987). We stated in *Crabb* that "tax defalcation ... borders on embezzlement of funds received from clients in payment of sales tax, which monies Crabb, in effect, *holds in trust for remittance to the State.*" *Crabb*, 416 N.W.2d at 260 (emphasis added). As noted above, Kallenberger was notified of this "concept" when he received the letter in July, 1991, from Glen Johnson of the Board. According to Kallenberger's own testimony, this letter specifically stated that "the [b]oard considered sales tax to be money held in trust." Hr'g Tr. 9. Even

after receiving "actual" notice from the Board, Kallenberger continued to file delinquent sales tax returns until he was served with a complaint in January, 1992.

Kallenberger further claims that he was "[un]aware of the criminal statutes with regards to sales tax filings." Hr'g Tr. 21–22. The facts indicate that both Lomheim and Tellinghuisen addressed criminal sanctions in their communications with Kallenberger on September 26, 1989 and June 6, 1990, respectively.

Kallenberger continued, over a period exceeding two years, to convert funds "held in trust for the state" to his own use and file delinquent sales tax returns. While each individual sales tax delinquency may appear at first glance a minor violation, this court must look at the entire picture.[6] "A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." SDCL ch. 16–18, Appx. Rule 8.4 Comment. Therefore, this court holds that Kallenberger's conduct indicated an indifference to legal and financial obligations and warrants public censure.[7]

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Kallenberger is not Pretty–Boy Floyd, Al Capone, or John Dillinger.

Rather, this case involves a young, practicing lawyer in the small, rural community of Eureka, South Dakota. He underwent hard economic times because he lost an election, went off the public payroll, moved his office, had problems with the building,

---

**5.** This court further noted that "[w]hile we are not unappreciative of, nor insensitive to, the problems that confront the young inexperienced attorney who seeks to establish a sole practice, financial problems *per se* are not an excuse for the manner in which respondent conducted his professional affairs with respect to the matters here in question." *Rude*, 221 N.W.2d at 47 (emphasis in original).

**6.** Kallenberger's testimony also indicates he failed to file Forms 940 (Federal Unemployment

Tax) and 941 (Employer's Quarterly Federal Tax Return) in 1989 and 1990. Hr'g Tr. 14.

**7.** SDCL 16–18, Appx. Rule 8.4 provides:
It is professional misconduct for a lawyer to:
....
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
....
(d) engage in conduct that is prejudicial to the administration of justice[.]

and with the community also falling on hard times, had a difficult time paying his bills. During his years in Eureka, raising his young family, he served on the Church Council, President of the Chamber of Commerce, and several other civic organizations to help his community. As I say, he is not Pretty Boy Floyd, Al Capone or John Dillinger. He is a decent, hardworking young lawyer, who characterized himself in a letter to the Chief Justice on May 8, 1992, as having become "spread too thin and his own personal affairs suffer." We, on this Court, and the Disciplinary Board, were furnished a copy of that letter.

Reading over the majority opinion, I thought that perhaps we were dealing with a real western desperado. His desperado conduct led him to plead guilty to *one* Class 1 misdemeanor. Under SDCL 16–19–36, setting forth the definition of serious crimes committed by an attorney which must be reported to the Supreme Court, Kallenberger's misdemeanor conviction is not a serious crime.* In South Dakota, lawyers, like the grocery stores, are turned into tax collectors. Kallenberger has been disciplined enough, in my opinion, for he had to appear before a Circuit Judge who pronounced sentence upon him, namely: A suspended imposition of sentence for a period of eighteen (18) months; additionally, he was required to keep current with his sales tax returns.

When this case was argued before this Court on September 1, 1992, both Board counsel, Mr. Zieser, and Kallenberger represented to the Supreme Court that he had paid all taxes, penalty, and interest. Further, since January of 1992, he had timely filed all of his state sales tax returns promptly. Further, that he had no overdrafts on his office and had established a line of credit with the local bank as a precaution to avoid any overdrafts or humiliation.

Our State Disciplinary Board works hard; it is a rather thankless job; it had recommended a private reprimand, i.e., a sanction within the lawyer's association so as to avoid further public exposure and to also monitor Kallenberger's conduct as regards sales tax returns. You would think that this would be enough. Not so in this Court. As I have repeatedly expressed in other writings, this Court has a Statist mind set. If the State of South Dakota is a party, as distinguished from a private enterpriser or an ordinary citizen, we must elevate our thinking to the State's position, as if that entity of government is sacred. As, if you will, the State has greater rights than the ordinary citizen.

Per the transcript, dated *April 3, 1991* (sic, I believe it was 1992) at 2:30 p.m., at the Holiday Inn Rushmore Plaza, Rapid City, South Dakota, the Disciplinary Board met concerning Kallenberger's case. A formal record exists and Kallenberger was there with his lawyer, Mr. Von Wald. *He had a due process hearing on that date.* Questions were asked and answered under oath, with an opportunity to cross-examine.

Subsequent to that proceeding, and which the majority now relies upon, in depth, a part of this record now contains:

1. An affidavit of John Lonheim, dated *April 24, 1992*, with a host of facts, therebefore *untestified to*, reciting a history of Lonheim's activities concerning Kallenberger;

2. An affidavit of Roger Novotny, also a state agent, appending Exhibit A, which is dated *April 28, 1992*, again subsequent to April 3, 1992; and which also attached a letter from Attorney General Tellinghuisen dated

---

* Kallenberger has never been formally charged with nor informally accused of failing to file Federal Unemployment tax and an Employer's Quarterly Federal Tax Return. The record does not disclose that Kallenberger was accused of this in any proceedings below. Neither the original Report nor the Amended Report and Recommendation of the Disciplinary Board of the State Bar of South Dakota make any reference whatsoever to this alleged misconduct. Again, it appears that Kallenberger has not had due process on accusations against him; and the majority opinion has, sua sponte, brought this up anew without benefit of these allegations ever being a part of the formal disciplinary proceedings. It should be remembered that Kallenberger was not charged with a failure to file a sales tax return; he was charged with failing to file a *timely* sales tax return.

*June 6, 1990,* also relied upon by the majority opinion; again, *untestified to;*

3. An affidavit of David Nincehelser, another state agent, dated *April 28, 1992,* which specified a certain "log of events;" also, *untestified to;*

4. A two and one half page letter of David D. Wiest, Assistant Attorney General, addressed to Board Counsel Zieser setting forth his version of the facts about Kallenberger's conduct with reference to his sales tax deficiencies. But in this letter, dated *April 28, 1992,* Wiest expresses "Please be advised that Mr. Weber is an attorney for the Department of Revenue, and is not an Assistant Attorney General. Prosecution decisions are made by the Attorney General's Office based upon information provided to us by the Department of Revenue. Mr. Weber does not speak for the Attorney General's Office, and does not direct the Attorney General's Office in the criminal prosecution of any case." This was not produced at any hearing and was also *untestified to.*

It appears, from the record, that Board Counsel Zieser, concerned with "whether or not the Department of Revenue have in fact treated this man fairly" (a quote from his letter to the Chief Justice dated *April 30, 1992*) sought information from the Department of Revenue. These affidavits, which I have outlined above, thereby became a part of this record, at least as I review this record, and were employed by the majority opinion to jeopardize the legal position of Kallenberger.

But, to colloquialize, now comes the zinger. Lo and behold, Timothy Weber, an attorney with the Department of Revenue, saw fit to file his own Affidavit, dated *May 6, 1992.* Rather than to characterize or summarize same, I am attaching it hereto, making it a part of my dissent in this case. You be the Judge. But to me, it clearly demonstrates that Kallenberger relied upon his friend's counsel and advice, his friend then being an attorney with the Department of Revenue. And Kallenberger was, indeed, "... lulled into a false sense of security" believing, just as that attorney told him, who was the attorney for Department of Revenue, that "so long as he kept the Department informed and paid the taxes, penalties and interest, the Department would take no further action." Those were the words of the state agent.

Can these practicing lawyers who sit on this Board think, read, understand, and balance the ebb and flow of a given ethical scenario? Here, the Board was heavily influenced by the showing of Timothy Weber, an attorney for the South Dakota Department of Revenue. Said Board is comprised of some of the top lawyers in this state, with years of experience to back up their judgment. On *June 29, 1992,* the Board, with all of this before them, recommended to this Court that Donald Kallenberger be disciplined by private reprimand. I fully appreciate that we give careful consideration to the Board's judgment but we are not bound by its judgment. *In re Discipline of Draeger,* 463 N.W.2d 346 (S.D.1990) and *In re Husby,* 426 N.W.2d 27, 28 (S.D.1988).

I agree with the Board and not with this Court. I close with the penultimate paragraph of the Board's findings:

The Board found (sic, should be finds) as fact that the Respondent was in contact with Tim Weber, an attorney with the Department of Revenue, during his sales tax delinquency. *That Respondent did not ignore the problem* and believed that contact with Mr. Weber was an assurance to the Department of Revenue that the tax would be paid with penalty and interest in time. This finding by the Board caused the Board to recommend a private reprimand rather than a more severe discipline. (Emphasis supplied mine).

In essence, Kallenberger's conduct in not filing timely returns was not willful per the Board. I would that this thorn not prick Kallenberger for he was led into a thicket, albeit by his friend, who nobly came forth to expose the truth. Surely, it will be one

of the proudest moments in his legal career.

Therefore, I dissent.

ATTACHMENT

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

In the Matter of the Discipline of
Donald W. Kallenberger as
an Attorney at Law.

[May 7, 1992].

CASE #17873

AFFIDAVIT

STATE OF SOUTH DAKOTA
      ss:

COUNTY OF HUGHES

The undersigned, Timothy T. Weber, being first duly sworn on oath, deposes and states as follows:

1. I am an attorney employed by the South Dakota Department of Revenue (Department) and have been so employed since September of 1987.

2. Prior to my employment with the Department I was in private practise in Eureka, South Dakota and was the State's Attorney for McPherson County from 1977 to August of 1987.

3. For approximately five years I was associated with Donald W. Kallenberger in the practise of law. Our association terminated when I left for my present position, and Don continued with the practise in Eureka.

4. Since my move to Pierre in 1987, Don and I have been in regular contact, mostly by telephone. We mainly conversed about the cases which we had jointly handled, but we also discussed more casual topics. On a number of occasions, we talked about Don's tax filing status with the Department. Don would explain why he had failed to timely file a return. I recall one period in which his secretary had quit and another occasion where his office computer failed. During these conversations, I would urge Don to take care of the filing as soon as possible, but would also assure him that the Department does not take any formal action unless the taxpayer is personally contacted. The Department's policy, as explained to me, has been to work with the taxpayer as much as possible before requesting civil or criminal action. I would tell Don to keep the Department informed if he had any problems or was unable to timely file or pay his sales tax liability.

5. Following the conversations we would have concerning Don's tax filing, I would pass on his comments to personnel of the Department. Because of my past association with Don, I deliberately refrained from voicing any opinions concerning potential Departmental action against Don or taking part in any such action.

6. It is my belief that Don never intended to evade his tax liabilities to the State of South Dakota. In our discussions, my comments to him might have been misleading or they may have lulled him into a sense of false security to the effect that so long as he kept the Department informed and paid the taxes, penalties and interest, the Department would take no further action.

Dated this 6th day of May, 1992.

/s/ Timothy T. Weber
Timothy T. Weber