#29156-DG
**2021 S.D. 11**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF THE DISCIPLINE OF

SCOTT R. SWIER

AS AN ATTORNEY AT LAW

\* \* \* \*

ORIGINAL PROCEEDING

\* \* \* \*

THOMAS H. FRIEBERG
ROBERT B. FRIEBERG of
State Bar of South Dakota
Beresford, South Dakota                    Attorneys for Disciplinary
                                           Board.


JEFFERY G. HURD of
Bangs, McCullen, Butler, Foye & Simmons
Rapid City, South Dakota                   Attorneys for respondent.

\* \* \* \*

CONSIDERED
JANUARY 22, 2021
OPINION FILED **02/17/21**

#29156

GILBERTSON, Retired Chief Justice

[¶1.]        On February 19, 2020, this Court suspended Scott R. Swier from the practice of law for a period of one year and imposed conditions that Swier had to meet before seeking reinstatement.  *Matter of Discipline of Swier*, 2020 S.D. 7, ¶ 85, 939 N.W.2d 855, 874.  The Court amended its order of suspension on June 24, 2020.  The Court suspended Swier indefinitely after determining that he violated the Court's Order of Suspension "by practicing law while suspended and conducting himself as a legal assistant without the approval of this court, SDCL 16-18-34.4."  The matter was remanded to the State Bar's Disciplinary Board to conduct a full investigation of Swier and the Swier Law Firm to determine if Swier or members of the Swier Law Firm committed additional violations of the Court's Order of Suspension.

[¶2.]        The Board filed its report with the Court.  The Board reported that Swier's conduct that triggered the Amended Order of Suspension did occur but was an isolated event and that the attorney members of Swier Law Firm did not assist or condone any violation of the Court's order suspending Swier from the practice of law.  The Board recommended that the Court take "such action as it deems appropriate."

## Facts

[¶3.]        The facts leading to Swier's initial suspension are set forth in *Swier*, 2020 S.D. 7, 939 N.W.2d 855.  Shortly after this Court suspended Swier, a lawyer from May, Adam, Gerdes, and Thompson, LLP, (May Adam) notified the Disciplinary Board that Swier answered an email sent from a May Adam attorney to Michael Henderson and Brooke Swier Schloss, Swier Law Firm attorneys.  In the

email, Swier informed the May Adam attorney that "[o]ur client has not yet given us permission to waive FF & CL."

[¶4.]     As a result, the Court entered an Order to Show Cause why Swier should not be held in contempt of its order suspending him, SDCL 16-19-82, and why his apparent violation of SDCL 16-19-33(2) should not result in the extension of his period of suspension or the revocation of his license to practice law. *See* SDCL 16-19-22. In response, Swier argued that the email was inconsequential; he merely performed the clerical task of passing a message from Swier Law Firm attorneys to a May Adam attorney. He claimed the email did not constitute the practice of law or violate the Order of Suspension.

[¶5.]     This Court concluded otherwise and filed an Amended Order of Suspension and Order of Remand. This order provided, in part:

> WHEREAS, respondent Swier violated this Court's Order of Suspension by practicing law while suspended and conducting himself as a legal assistant without the approval of this Court, SDCL 16-18-34.4(2), now, therefore it is
>
> ORDERED that respondent Swier's fixed period of suspension shall become indefinite until further Order of this Court, SDCL 16-19-35(2).
>
> * * * * *
>
> IT IS FURTHER ORDERED that this matter is remanded to the Disciplinary Board of the State Bar of South Dakota to conduct a full investigation of respondent Swier and the Swier Law Firm to determine if he or members of the Swier Law Firm have committed additional violations of this Court's Order of Suspension.
>
> IT IS FURTHER ORDERED that the Disciplinary Board shall furnish a report of its findings to this Court.

[¶6.]     The Disciplinary Board investigated and filed its report and its recommendation to the Court. The Disciplinary Board interviewed Swier Law Firm attorneys and staff. It also subpoenaed, received, and reviewed Scott R. Swier's emails and Swier Law Firm's billing records, and reviewed Swier Law Firm's leases. Brooke Swier Schloss, Swier's law partner and sister, and Swier appeared before the Disciplinary Board separately, and the Disciplinary Board examined them under oath.

[¶7.]     The effective date of Swier's initial one-year suspension was March 20, 2020. After that date, Brooke Swier Schloss became the sole partner of Swier Law Firm. Swier was rarely seen at Swier Law Firm locations. However, Swier remained employed by the law firm to assist in marketing, updating website articles, and writing blog posts for the firm's website. He also cleaned the office and did filing. His contact with the firm's other attorneys was limited to updating them on the status of matters and giving them background information to assist in their representation of clients. He had no direct contact with Swier Law Firm's clients. He was paid a monthly salary that was based upon the annualized base salary he received while practicing as an attorney. Swier owns the building housing Swier Law Firm. The Disciplinary Board found the rent to be reasonable.

[¶8.]     After the Court's June 24, 2020 Amended Order of Suspension, Swier has not been present at Swier Law Firm's offices. He has not done any work or received compensation for marketing or other services. He has not been present or been in communication with members of the firm regarding the activities or management of Swier Law Firm. He has been pursuing other business ventures,

including a construction business in North Sioux City, South Dakota, and an ice business in Avon, South Dakota.

[¶9.] According to the Disciplinary Board, the email chain that ultimately triggered the Court's Order to Show Cause and Amended Order of Suspension was an isolated event. Swier claims he acted at the request of Brooke Swier Schloss who wanted to respond quickly to an inquiry from opposing counsel but was unable to do so personally. The Disciplinary Board did not uncover any on-going pattern of violation. It also found that the attorneys of Swier Law Firm did not assist in, or condone, any violation of the Court's order suspending Swier from the practice of law.

[¶10.] Based on its investigation and findings, the Disciplinary Board recommended that the Court "take such action as it deems appropriate."

### Disciplinary Goals and Standard of Review

[¶11.] The South Dakota Supreme Court has the affirmative duty to "govern terms of courts, admission to the bar, and discipline of members of the bar." S.D. Const. art. V, § 12. We take this obligation seriously because "[a] license to practice law in this state is a privilege and a continuing proclamation by the Supreme Court that a licensed attorney is an officer of the Court, is fit to be entrusted with legal and judicial matters, and is able to aid in the administration of justice." SDCL 16-19-31. Each recipient privileged to receive a license to practice law has the duty to conduct himself at all times, "both professionally and personally, in conformity with the standards of conduct" imposed upon members of the bar as conditions for the privilege to practice law. *Id.*

[¶12.]     It is essential to preserve trust in the legal profession. *Petition of Pier*, 1997 S.D. 23, ¶ 8, 561 N.W.2d 297, 299. A lawyer's responsibility to protect clients' property, freedom, and at times, lives, is formidable. *Matter of Chamley*, 349 N.W.2d 56, 58 (S.D. 1984). "Only by providing high quality lawyering can the integrity of the legal profession remain inveterate and the confidence of the public in the Bar remain strong." *Matter of Discipline of Wehde*, 517 N.W.2d 132, 133 (S.D. 1994).

[¶13.]     The attorney disciplinary process protects the public from further fraudulent, unethical, or incompetent activities involving a lawyer. *In re Discipline of Reynolds*, 2009 S.D. 9, ¶ 50, 762 N.W.2d 341, 352. It preserves the image and integrity of attorneys, the bar association, and the legal profession. *Id.* It also deters like conduct by other attorneys by putting the Bar on notice that such action or inaction violates the Rules of Professional Conduct. *See* SDCL ch. 16-18 appx. "Its purpose is not to punish the attorney." *Reynolds*, 2009 S.D. 9, ¶ 50, 762 N.W.2d at 352. "The real and vital issue to be determined is whether or not the accused, from the whole evidence as submitted, is a fit and proper person to be permitted to continue in the practice of law." *In re Discipline of Simpson*, 467 N.W.2d 921, 922 (S.D. 1991).

[¶14.]     As far as the discipline determination, this Court does not "defer to the Disciplinary Board's recommended sanction." *Swier*, 2020 S.D. 7, ¶ 56, 939 N.W.2d at 868. We make that determination de novo. The appropriate discipline for a member of the "Bar rests firmly with the wisdom of this Court." *Id.*

**Analysis**

[¶15.] This Court has observed that "[h]e acts at his peril who treats a communication from the [Disciplinary Board] with the indifference accorded an unsolicited invitation to join a book club." *In re Rude*, 88 S.D. 416, 423, 221 N.W.2d 43, 47 (1974). Likewise, an attorney who disobeys or violates a Supreme Court order in a disciplinary proceeding acts at that attorney's peril. Grounds for discipline include "[d]isobedience to, or violation of an order of the court requiring the attorney to act or refrain from acting in a particular manner[.]" SDCL 16-19-33(2). We stress that the Rules of Professional Conduct are not cafeteria style rules; an attorney is not free to pick and choose what rules to follow or disregard the rest on a whim.

[¶16.] When disciplinary proceedings began, the Disciplinary Board recommended that public censure was appropriate in Swier's case. *Swier*, 2020 S.D. 7, ¶ 81, 939 N.W.2d at 873. This Court had "a low degree of confidence that the solemnity of these disciplinary proceedings and the Board's proposed sanction will, themselves, effect the lasting change necessary to protect the public."[1] *Id.* ¶ 83, 939

---

1. This Court's concerns were based upon the fact that Swier did not have office procedures and policies to identify conflicts of interest, failed to take appropriate action to address apparent conflicts of interest, was unaware of the responsibilities as a managing attorney, delegated decision-making and supervisory authority to employees, and continued representation when he knew conflicts existed. *Swier*, 2020 S.D. 7, ¶ 82, 939 N.W.2d at 873. "Of grave concern" was Swier's lack of full candor and credibility with the Board. *Id.* ¶ 83, 939 N.W.2d at 873. At oral argument before this Court, Swier's argument was charitably characterized as an "infomercial"; Swier lacked "sincerity and remorse and any attempt at either was pro forma." *Id.* ¶ 79, 939 N.W.2d at 873.

N.W.2d at 873. The Court suspended Swier for one year and outlined steps that Swier must take before petitioning for reinstatement.[2] *Id.* ¶ 85, 939 N.W.2d at 874.

[¶17.] Three months after the effective date of Swier's initial suspension for the subsequent violation, the Court entered its order suspending him from practicing law indefinitely, and suspending him until further order of the Court, for practicing law under suspension and conducting himself as a legal assistant without Court approval. We must now consider the appropriate discipline for a suspended attorney who violates an Order of Suspension.

[¶18.] This is not the first time the Court has been confronted with this issue. Admittedly, each case is factually unique, but the rules applied in each have general application. In the case of *In re Hosford (Hosford I)*, the Court appointed referee found attorney Hosford guilty of unethical and improper conduct in the solicitation of business. 60 S.D. 625, 245 N.W. 822-23 (1932). The referee also found Hosford guilty of improper and unethical conduct involving moral turpitude and subornation of perjury by "framing up" a defense in a criminal case. *Id.* at 823. The referee recognized the gravity of Hosford's transgressions, but recommended leniency due to Hosford's years of practice, which was the sole source of his income, his poor

---

2. These conditions included passing the Multistate Professional Responsibility Examination, successfully completing a law office management course approved by the Court, and reimbursing the State Bar of South Dakota and the Unified Judicial System for expenses allowed under SDCL 16-19-70.2. He was also required to submit an affidavit stating under oath that he had reviewed the Oath of Attorney and the Rules of Professional Conduct; that he recognized that his conduct violated the Rules of Professional Conduct by which he is bound; that he will devote every effort in future practice to fully abide by the Rules of Professional Conduct and Oath of Attorney; and, upon reinstatement, he will maintain professional malpractice insurance along with proof thereof. *Swier*, 2020 S.D. 7, ¶¶ 85-87, 939 N.W.2d at 874. Swier has not acted to comply with the preconditions to reinstatement.

health, and his seriously impaired eyesight. *Id.* The Court noted that, while the deliberate subornation of perjury was ample to justify disbarment, it was inclined to accept the view that the case could adequately be dealt with by something less than disbarment. *Id.* The Court suspended Hosford from the practice of law for one year with "both the hope and the opinion that he can and will thereafter conduct his practice of his chosen profession in such manner that no proper exception can be taken thereto." *Id.*

[¶19.] In *In re Hosford (Hosford II),* the Tripp County Bar accused Hosford of violating the order of suspension by indulging in the practice of law during the period of suspension. 62 S.D. 374, 252 N.W. 843 (1934). Hosford kept his law office open and fully equipped after suspension. *Id.* at 844. He went to the office daily, employed a stenographer, left law office signage on the office window and doors, and consulted with clients and prospective clients. *Id.* at 849. While Hosford did not personally appear in court, the referee found that Hosford associated himself with another attorney to continue the practice of law by resorting to the use of subterfuge. *Id.* at 846. The referee recommended disbarment. *Id.*

[¶20.] The Court considered the record in Hosford's original case and whether Hosford willfully disobeyed or violated a court order requiring him to forbear an act connected with or in the course of his profession. *Id.* at 846-47. It noted Hosford's "aggressive militant combativeness" in defending himself and his unwillingness and inability to feel any contrition for his actions. *Id.* at 849. The Court ruled the judgment of suspension failed to serve its intended purpose and disbarred Hosford from the practice of law. *Id.* at 850. It observed:

> He has undertaken in his argument before this court to palliate
> the offense of subornation of perjury committed under

circumstances that indicate it could have been inspired by the most sordid motives only.

The whole record reeks with an unhealthy miasma of blunted ethical sense in the matter of attitude, questionable methods, manner of practice, and lack of wholesome professional idealism.

There is an underlying and pervading motif and entity in the record made by the accused, and in the record of these proceedings, that constrains us to the conclusion that accused suffers so great a poverty of ethical concept as to make incomprehensible to him the high standards of conduct, integrity, honor, unselfish willingness to serve, and professional probity that should characterize a lawyer. We are without indication of his present ability to understand the necessity for those standards.

*Id.* at 389, 252 N.W. at 849-50. The Court denied Hosford's application for reinstatement. *In re Hosford (Hosford III)*, 64 S.D. 161, 265 N.W. 598 (1936).

[¶21.] Unfortunately, the pattern has continued, albeit in different contexts. Attorney Reynolds failed to promptly attend to client needs resulting in a default judgment being taken against a client for failure to promptly file an answer. *Reynolds*, 2009 S.D. 9, ¶ 39, 762 N.W.2d at 349. Another client repeatedly asked Reynolds to draft and file a complaint. *Id.* ¶ 17-19, 762 N.W.2d at 344. Reynolds procrastinated, and the client never made it to court because of the running of the statute of limitations despite his repeated pleas to Reynolds. *Id.* ¶ 20, 762 N.W.2d at 344. While the Disciplinary Board recommended disbarment, the Court suspended Reynolds for three years with the hope that "a lengthy suspension will allow a once very competent attorney time to identify to himself his professional flaws and attempt to cure them." *Id.* ¶ 65, 762 N.W.2d at 356. It was not to be. The Court learned that Reynolds misrepresented his suspended status in South Dakota to a bar admissions authority in another state. Reynolds consented to

disbarment, SDCL 16-19-65, and for the protection of the public, this Court disbarred Reynolds in South Dakota.

[¶22.] In a 3-2 decision, Ogilvie was conditionally admitted to the practice of law despite various character flaws. *In re Ogilvie (Ogilvie I)*, 2001 S.D. 29, ¶ 3, 623 N.W.2d 55, 56. Notwithstanding his prior plea to this Court that he would no longer engage in such misconduct, the "[p]roblems on which he earlier received the benefit of the doubt have re-emerged." *In re Ogilvie (Ogilvie II),* 2005 S.D. 65, ¶ 14, 698 N.W.2d 78, 82. The Court revoked his conditional license to practice law. *Id.* ¶ 15, 698 N.W.2d at 82.

[¶23.] In the case before us, Swier's ethical lapses, while serious and disturbing, are not as egregious as those in *Hosford I*, *Hosford II*, *Reynolds*, or *Ogilvie II*. Swier admitted to the allegations in the initial proceeding. *Swier*, 2020 S.D. 7, ¶ 1, 939 N.W.2d at 857. In this proceeding, he admitted to participating in the email thread, but attempted to justify it as inconsequential and clerical. Like Hosford, Swier has been loath to accept responsibility for his actions and has done so "only through capitulation." *Id.* ¶ 83, 939 N.W.2d at 873. Unlike Hosford, Reynolds, and Ogilvie, Swier's violation of the Order of Suspension was an isolated incident and not a seamless continuation of the practice of law.

## Appropriate Discipline

[¶24.] Given the fact that Swier is suspended from the practice of law, a pattern of multiple violations would have led to his disbarment in order to protect the public. Based on this single violation, which nevertheless was an intentional one, we extend Swier's suspension from the practice of law for an additional 60 days following the end of his one-year suspension on March 20, 2021, require Swier to

reimburse the State Bar of South Dakota and the Unified Judicial System the $8,373.73 in costs and expenses for the initial suspension and $8,915.58 in costs and expenses for the current proceeding, and require Swier to meet the conditions the Court imposed in *Swier*, 2020 S.D. 7, ¶¶ 85-87, 939 N.W.2d at 874, (restated in this decision at n.2), before petitioning for reinstatement.

[¶25.]     JENSEN, Chief Justice, and SALTER and MYREN, Justices, and MEANS, Circuit Court Judge, concur.

[¶26.]     MEANS, Circuit Court Judge, sitting for KERN, Justice, disqualified.

[¶27.]     GILBERTSON, Retired Chief Justice, sitting for DEVANEY, Justice, disqualified.